Last case on this morning's docket is People v. McDaniel. We have Mr. Anderson for the appellant, Mr. Cormick for the athlete.  Good morning, Your Honors. I'm Eddie Anderson for the defendant, Mr. Robert McDaniel. Mr. McDaniel is appealing his convictions for burglary and theft. Our contention in this appeal is that the evidence was insufficient to prove Mr. McDaniel guilty of burglary and the theory of remaining without authority. The facts of the case are quite straightforward. Mr. McDaniel walked into the Tokyo Walmart wearing a heavy coat and sunglasses. This attracted attention because it was not particularly cold and it was nighttime. The loss prevention agent of the Walmart saw Mr. McDaniel, based on his training, assumed that he might be a potential shoplifter and watched him carefully in the store, had an associate manager train the security cameras on Mr. McDaniel and Mr. McDaniel walked back through the store to the fishing equipment and grabbed a reel off the rack, opened the package, put the reel in his coat, did that two more times, and turned and walked out of the store. He was in the store about six minutes. The loss prevention agent followed him. A manager was waiting for him at the door. They stopped him going out the door, brought him back to the store, held him to the police. He shoplifted three fishing rigs. And I'm not going to go into what he says, the state says that in their brief. This is a theft. Burglary is a Class II felony. Retail theft of the amount of money involved in this case is a Class A misdemeanor. It's a substantial difference in the potential penalties involved in this. The case law that we rely on, and actually the case law that the state relies on, pretty much says that burglary by remaining without authority requires something more than just the presence in the store with the intent to commit a theft, and then acting on that intent. The Valero case that we cite involved someone taking some checks off a desk and leaving. While they were in the store, they were in the business, and at the point where they decided that they were going to take checks and make off with them, they had an intent to commit a crime, and I guess technically they were still in the business at the point where they did that. But the court said that's not enough to be burglary. There's got to be something more. This court's recent Richardson decision, I point out, I think makes clear what the real state of the law of theft and burglary, remaining without authority, is. In Richardson, the person was in a liquor store, left the shopping area of the liquor store, went into an employee's only area, and took some miles. And what this court found was that when he left the sales floor, was back in the back area of the store, he was essentially hiding, he was doing something beyond simply being in the store, and that makes it a burglary. And I think that's pretty consistently what burglary, remaining without authority, is meant to be. Was he hiding in the store after he put the reels in his? No. Well, let's face it. This has never been brought up. It was dark. Apparently it was. What time was it? Early evening, I think. Okay, it was kind of dark. He shot because it was. Yeah. So was he not hiding behind his sunglasses? Why did he have sunglasses if he didn't intend to hide himself? Well, I guess hiding his identity, I guess. Yes, hiding his identity behind his sunglasses because it wasn't sunny and he wasn't outside. Why is that not hiding? Well, I suppose, how would you know case to case that someone has sunglasses on because they have an eye condition? Well, there never was any evidence of that, was there? Well, I agree with you with that, but I'm saying it certainly would be a very ineffective means of hiding the criminal activity. I guess it would depend on the size of the sunglasses. I suppose, but on the facts of this case where he's observed taking the property off the shelves and pocketing it. While hiding. Behind sunglasses, maybe. I'm just throwing that out. I don't mean to scoff. I just, I hadn't really considered the possibility that the sunglasses would amount to. I guess you could, in some instances. There's some facts in the record, whether he was wearing sunglasses or not. Oh, yes, there is. I believe there is. Yeah, he's got sunglasses on. And the loss prevention agent says that's one of the things we're told. If you see someone come in with sunglasses, there might be a shoplifter, and you might want to pay more attention because one of the things we look for is shoplifters tend to shift their eyes around. I would take down that, that sunglasses make it harder to identify sometimes rather than just shifting eyes. Well, in some circumstances, I suppose a bank robber or something like that. Well, what's the difference? But hiding, I believe, on the intent of what these laws have been read in cases involves a physical act of secreting yourself in the store. I understand that, but I've never seen a case on sunglasses yet. Well, I would agree, but I would say that that's not effectively hiding. After all, he's observed throughout committing the offense, and he is detained at the door. This activity, if you want to describe this as concealing himself. Well, I imagine there is a percentage of his face that you cannot see because of the sunglasses. That could be fair. I suppose, but I would say in a circumstance where the clothing is readily identified, he's on film, they're going to know that is this person, not some other. My point remains that the cases, in large measure, are ones involving physically remaining in the store after the store is closed, going into a back room of the store. There's the case of the church where the person is waiting for the pastor and goes off into a back room and takes vacuum cleaners. They're not just lifting something off the shelf and walking away with it. That's theft, not burglary. And our contention is that, read the way the state would read this case, where it's simply the intent to take something that's still physically in the store, this is going to convert every retail theft into a burglary. And that's stretching the law quite far and beyond what's intended. And I would ask the court to look at the Richardson case, the Valero case, and we would ask you to please reverse Mr. McDaniel's conviction. Any other questions? Thank you, Judge. Do you have an opportunity for rebuttal, Mr. Cormack? Your Honors, counsel, the defendant was convicted of burglary and theft. Burglary is not theft. One's not a lesser included of the other. Burglary is this. A person commits burglary when, without authority, he knowingly enters or, without authority, remains within a building or any part thereof with the intent to commit therein a theft. It doesn't require a taking. People have discussed the taking of the reels only as it bears on establishing what his intent was before he did the taking. And that's the only reason people mention theft, not trying to confuse the issue or make this into a simple theft. It is a burglary and a theft, and here's why. The Valero case, for instance, upon which the defendant relies, was really wrongly decided. Even the special concurrence points out that Weaver, the Illinois Supreme Court case in which the majority relied, was dicta when it said that an intent formed after a lawful entry would not support burglary. Cases since then, such as Booth's, have recognized that a person may lawfully enter into a place, a retail establishment, and thereafter form an intent to commit therein a theft. And at that point, where the intent is formed and they remain, then the burglary is complete. If they go ahead and take something, we have a retail theft or a theft, which is punished differently, as it should be, by the amount of property taken, the dollar amount. But it is different. In Booth's, he fell asleep, was in the store overnight. That's different. Valero, he went to a place he wasn't supposed to be. Correct. Now that's here. He went into the Walmart store or wherever it was, I don't know. Went in and out. The jury, for some reason, acquitted him of count one, which was unlawful entry with the intent to commit. But they found him guilty of the remaining. And so, what supports that intent? Well, one is the fact that he entered the store on February 7, 2010, at 830 in the evening. It had been dark, according to the testimony, by that time, by at least four hours. And he has on sunglasses and he has on a toboggan cap. He's concealing his identity. And the next thing is he doesn't go in. And the circumstances show his intent, the formation of his intent. He doesn't go in and shop. He doesn't get a car to, you know, examine merchandise. He makes routes into electronics and then out of electronics. And then on the back alley into the, towards sporting goods. And then he goes into sporting goods and then past, in the alley between sporting goods and hardware. And then he goes into the sporting goods and in there to the fishing aisle. And he's not shopping. He seems to be looking for an opportunity to pick something up. And this is all circumstantial evidence of his intent, that he's formed an intent to commit a theft after he got in, at least, well, according to the jury, after he got into the store. And it's the circumstances as a whole. He has, he is concealing his identity. He does have on a hat. He does have on the loose coat. He does have on the sunglasses. And now when most people, at least when they would come into a store, would remove sunglasses in February at 830. No real reason to be wearing it. No testimony that he had some sort of eye condition or anything. And so all of these things, even though it is a brief amount of time, he is, as Engles, the loss of a vision officer testified, he had no authority to remain in Walmart after he formed that intent to commit a theft. And the circumstances show that he did form an intent to commit a theft. He doesn't stop and shop. He doesn't have a basket. He doesn't have anything. But he's doing this quick route, finding something that he can steal. And that is, that goes to the intent to commit the theft. As soon as he has that intent to commit the theft, he is remaining without authority in that building. And it doesn't matter that he didn't go to a place where he had no authority to be. He has his intent and his remaining thereafter in any part of the store. Because the statute doesn't say he has to go to a spot where he has no authority to be. The statute says he commits a burglary when without authority he remains within a building. And that's why this is burglary, even though it is a brief amount of time. And it's not merely a retail theft. What about the defense counsel's argument that this converts every shoplifting charge into a burglary charge, from a misdemeanor to a class 4 felony? Well, and I admit that these are slim facts. But nonetheless, not every person who commits retail theft conceals their identity. And not every person that comes in and commits retail theft is someone who wasn't simultaneously shopping, truly shopping. But then, you know, they have the spur of the moment desire to steal something. This shows from the beginning, from the time he goes, from the very time he's in the store, and he doesn't remove his jacket, and he doesn't remove his toboggan cap, and he doesn't remove his sunglasses, and he doesn't shop, but he goes looking, you know, in and out of electronics and up and down the aisles and goes, you know, looking for something that he can steal. He's, you know, he's very well. The loss prevention officer testified about all the cameras and where places can be seen and where the cameras do not see well. And, you know, electronics is one that it's well covered because electronics are stolen. You know, but this guy goes, you know, in and out of electronics, up and down, into sporting goods, into the fishing aisle, and he's not shopping. So the circumstances as a whole just, and it would not necessarily convert every retail theft into burglary because not every, I mean, you would have to, you would have to establish that they formed an intent to commit that theft at a certain, for a certain time before they do commit it, and that they do things that will conceal their identity or the life. And so for that reason, it's close to the line, but nonetheless, I think it satisfies the elements of the crime. And this court should affirm. Unless there are any questions. Thank you. Mr. Anderson? Burglary and remaining without authority doesn't require concealing identity. It just requires being within the store, doing something to revoke your authority to be lawfully in the store. You don't have to walk into a store to shop to have authority to be in the store. You could walk into the Wal-Mart to compare prices between their store and King Mark, not be shopping. You'd have authority to be there. Actually, if you just needed a blouse and steamer to walk around the aisles, I think you'd have authority to do that. So that's not the key. As she said in her take on this case, he had intent when he, from the beginning. And as the court asked, well, what's the distinction here? Why wasn't he convicted of entering without authority? The jury found that he didn't. They found that his intent must have occurred sometime in the store. And given that, there really isn't a distinction between a retail theft and a burglary. If the only distinction becomes you're in the store, you decide, I think I'd like to pocket that and walk off with it, and you act on that intent, really, practically, whether you physically complete that act, the thought and some manifestation of the act, I suppose, would amount to not just the theft but the burglary. And that's not what the law has been interpreting to me. I think it requires something beyond that, the hiding, some manifestation beyond just the act of theft. Is there anything clearly Booth and Richardson make a good case because they stayed after or went to a place where they were not allowed to go to? You know, the statute's not real clear here because it says poor without authority remains within a building. And so we've interpreted that to be either you went to a place you shouldn't be or you spent the night and then came in. Well, I think that's really the workaround to not enter into the problem that we're facing here, that once you say simply grabbing the property and leaving makes you a burglar, you've created two levels of punishment for basically one crime and various disparate levels of punishment. Now, I would say if the tell of someone being a shoplifter is sunglasses and a hat and a coat when it's maybe not the right conditions, you start to get into judgment areas where what is reasonable, what isn't reasonable. If I need to get some gasoline treatment for my vehicle and I needed it right away because it wasn't running well and I had to go somewhere, I go to Walmart, it's twilight and it's warm during the day but I've got a heavy coat and I've got sunglasses on. And I get out of the car, walk quickly into the Walmart, walk to the back of the automotive department, find the engine treatment I need. Well, I've probably just looked an awful lot like Mr. McDaniel. The statute said that the poor without authority remains after hours or in an area in which you're not authorized. It was early. It's perfect. That's not what the statute says. It just says poor without authority remains within a building. Those who get something, they leave. It's not very clear. Yeah, well, what creates the without authority part? And the state wants to argue that the without authority is as soon as you do something that violates the business's property interest in its inventory, you're authorized to vote. But the law, the way common law has interpreted it, the way it's been developed and the way it gets around this issue of making retail theft burglary all the time, which I don't think the state really can make a good distinction of, is to do what the courts have done, which is to say we've got to have a little bit more. He went into the bathroom. He waited until the store was closed. He hid himself behind some boxes in a store where there are no cameras and they didn't know he was back there. When no one was looking, he grabbed something and walked out. We don't have that here. We've just got plain old retail theft. And that's the conviction that should stand in this case. And we'd ask Your Honor to please reverse the burglary conviction. Thank you. Thank you both, counsel, for your recent arguments. The court will take the matter under advisement. We will stand in recess until the next one.